CARLTON J. WILLEY (CA Bar No. 269120)
DANIEL E. DERSHAM (CA Bar No. 284918)
WILLEY & BENTALEB LLP
JP Morgan Chase Building
560 Mission Street, Suite 1300
San Francisco, CA 94105
Phone: (415) 426-7111
Fax: (415) 276-1737
Carlton@WBLawPartners.com
Dan@WBLawPartners.com

*Attorneys for Plaintiff*
*International Medcom, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNATIONAL MEDCOM, INC., a California Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>S.E. INTERNATIONAL, INC., a Tennessee Corporation;<br><br>Defendant. | CASE NO.  3:15-cv-03839<br><br>JUDGE:<br><br>**[REDACTED VERSION OF DOCUMENT]**<br><br>**COMPLAINT WITH JURY DEMAND FOR:**<br><br>1) **BREACH OF CONTRACT (BASIC TERMS OF SETTLEMENT, DATED FEBRUARY 28, 2014)**<br>2) **BREACH OF CONTRACT (ADDENDUM TO BASIC TERMS OF SETTLEMENT, DATED SEPTEMBER 8, 2014)**<br>3) **BREACH OF CONTRACT (FAILURE TO ARBITRATE)**<br>4) **CAL. BUS. & PROF. CODE § 17200 UNLAWFUL BUSINESS PRACTICES**<br>5) **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>6) **DECLARATORY JUDGMENT** |

1

COMPLAINT WITH JURY DEMAND

Plaintiff International Medcom, Inc. ("IM" or "Plaintiff") hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000, and Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over the defendant in this matter, as the transactions and occurrences that are the subject matter of this Complaint arose out of Defendant's business relations and transactions with Plaintiff in California, as described herein. Defendant's contacts with Plaintiff in California were purposeful and substantial, such that Defendant should reasonably anticipate being called into court in California. Specifically, the contracts relied upon herein were made by Defendant with Plaintiff, a company doing business in Sebastopol, California, and the parties have consented to dispute resolution in the Northern District of California, and have waived any challenge to the jurisdiction or venue of the court over these matters.

3. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this Complaint occurred in San Francisco County, California, and the parties have consented to dispute resolution in the Northern District of California, and have waived any challenge to the jurisdiction or venue of the court over these matters.

## INTRADISTRICT ASSIGNMENT

4. Pursuant to Civil. L.R. 3-2(d), this case is suitable for assignment in the San Francisco division, because a substantial amount of the events and omissions giving rise to this action occurred in Sonoma County, California. In addition, this case meets the definition of a "Related Case" pursuant to Civil. L.R. 3-12, as stated below.

**RELATED CASE**

5. Pursuant to Civil. L.R. 3-12(b), Plaintiff believes that this case is related to *International Medcom, Inc. v. SE International, Inc.*, Case No. 3:13-cv-05193-LB, and will file a Notice of Related Case and Administrative Motion to Consider Whether Cases Should Be Related, pursuant to Civil L.R. 7-11.

**PARTIES**

6. Plaintiff International Medcom, Inc. ("IM" or "Plaintiff") is a California Corporation with headquarters at 103 Morris Street, Suite A5, Sebastopol, CA 95472 in Sonoma County.

7. Defendant S.E. International, Inc. ("SEI" or "Defendant") is a Tennessee Corporation with headquarters at 436 Farm Rd. Summertown, TN 38483.

**GENERAL ALLEGATIONS**

8. Founded in 1986, Plaintiff International Medcom, Inc. is in the business of developing, producing, and marketing high quality radiation detection instruments and systems.

9. Defendant S.E. International, Inc. is a manufacturer of radiation detection instruments.

10. The current dispute centers on SEI's marketing and sales of two specific radiation detection products, the Digilert and the Inspector.

11. Beginning in or about 1988, IM developed various versions of the device known as the Radalert Digital Radiation Monitor. With IM's consent, SEI began reselling the IM Radalert under the name Digilert.

12. Both the Radalert and the Digilert were known to be identical in the marketplace, and tens of thousands of customers worldwide became comfortable with the product's features and user interface, which in its simplicity made radiation detection approachable to nontechnical laypeople. Customers and users included the entire FDNY fire truck fleet (after 9/11), NY Governor's office, NY State Police, every major and most minor scientific supply companies in the United States—such as Fisher Scientific and Cole Parmer Instruments—as well as prestigious institutes of learning such as Johns Hopkins and Stanford Universities.

13. The second product, the Inspector, was based on IM's Radalert enclosure, design, user interface and features, but was developed in partnership between IM and SEI, as memorialized in a 1991 agreement (the "Inspector Agreement," a copy of which is attached hereto as Exhibit C), which permitted IM to brand the instrument under the IM label, and for SEI to brand the instrument with the SEI label, and for both companies to simultaneously manufacture and sell the product under a joint royalty agreement.

14. Under the Inspector Agreement, IM's contribution to the endeavor was to be an "initial cash investment, additional market research, electronic and **mechanical design, engineering and the custom enclosure**," while SEI was to contribute "its technical expertise, market research, [and] an initial cash investment for development, marketing, tooling, and manufacturing . . . ." Ex. C, p. 2 (emphasis added).

15. Further, the Inspector Agreement states unequivocally that with regard to intellectual property rights concerning the custom enclosure: "**Any proprietary design, software programming, and tooling for the custom enclosure are owned exclusively by IM. SEI will be prohibited from using it in future products without the agreement of IM**." Ex. C, p. 4. (emphasis added).

16. For several decades, both IM and SEI continued selling the Radalert/Digilert and Inspector products under their respective brands, with SEI making periodic royalty payments to IM for the Inspector, and purchasing and reselling the IM Radalert as the SEI Digilert. The Inspector has enjoyed even wider success than the Radalert/Digilert, and is in relatively high demand throughout the world, in the highly competitive radiation-detection marketplace.

17. Unfortunately, beginning in 2006, disagreements between the parties began to emerge with regard to the performance of the Inspector Agreement. IM repeatedly requested dispute resolution in order to amicably resolve disputes, and in 2011 demanded arbitration, which was required by the Inspector Agreement. Ex. C, p. 5. SEI refused to arbitrate. The dispute eventually culminated in IM filing a civil action against SEI in the Northern District of California in November 2013 (*International Medcom, Inc. v. SE International, Inc.*, Case No. 3:13-cv-05193-LB).

18. On February 28, 2014 the parties conducted mediation at JAMS in Denver, Colorado, before mediator Samuel Gordon, in an attempt to resolve the long-standing disputes between the companies and the pending litigation.

19. The parties achieved settlement at the mediation, memorializing the terms of their agreement in a contract titled "Basic Terms of Settlement" dated February 28, 2014. A true and accurate copy of that agreement (the "Basic Terms of Settlement") is attached hereto as Exhibit A and is incorporated by reference.

20. The parties subsequently entered into an additional settlement agreement, titled "Addendum to Basic Terms of Settlement" dated September 8, 2014. A true and accurate copy of that agreement (the "Addendum to Basic Terms") is attached hereto as Exhibit B and is incorporated by reference. Exhibits A and B will collectively be referred to as the "Denver Agreements."[1]

21. The crux of this civil action is SEI's failure to perform its contractual obligations pursuant to the Denver Agreements.

22. Among SEI's non-monetary obligations was an agreement by SEI to ██████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ Addendum to Basic Terms, Exhibit B, ¶ 7.

23. In the Basic Terms of Settlement, this obligation is stated as: ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ See Basic Terms of Settlement, Exhibit A, ¶ 7.

24. Since entering into the Denver Agreements, SEI has consistently refused to comply with many of its contractual obligations. SEI has not ████████████████████████

---

[1] The Denver Agreements contain a confidentiality clause that Plaintiff contends has been waived by the parties, but out of an abundance of caution, Plaintiff now files a version of this Complaint with redaction of all discussion of settlement terms in the Denver Agreements, as well as the Denver Agreements themselves. Plaintiff is seeking Defendant's stipulation to file the Complaint and the Denver Agreements in their unredacted entirety.

1    ▌▌▌▌▌▌▌▌▌▌  Rather, SEI has chosen to merely ▌▌▌▌▌▌▌▌▌▌

2    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ which has

3    injected pervasive confusion into the marketplace for this product.

4        25.    The below images, which are from the SEI website, show the SEI Inspector product

5    before and after the Denver mediation, demonstrating a lack of ▌▌▌▌▌▌▌▌▌▌

6    ▌▌▌▌ :

7    **BEFORE DENVER MEDIATION:**        **AFTER DENVER MEDIATION (Current):**



20        Similarly, SEI has made none of the required ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ .

21    The below images, which are from the SEI website, show the SEI Digilert product before the

22    Denver mediation and after the deadline for compliance, demonstrating a lack of ▌▌▌▌

23    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ :

24        / / /

25        / / /

26        / / /

27        / / /

28        / / /

COMPLAINT WITH JURY DEMAND

**BEFORE DENVER MEDIATION:**         **AFTER DENVER MEDIATION (Current):**

   

26. As is clearly observable, SEI merely ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. To demonstrate the lack of ▌▌▌▌▌▌▌, the images below show the IM Inspector product side-by-side next to the SEI Inspector, with the labels removed, and the color set to black-and-white:

**IMI**                                  **SEI**

   

27. The physical dimensions of the products, as demonstrated below, illustrate ▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅:



28. SEI is currently marketing ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅ on its website, through third-party retailers, and at physical tradeshows. This is causing pervasive confusion among customers and distributors—confusion that the Denver Agreements were meant to eliminate.

29. As a result of SEI's conduct alleged herein, IM has been damaged in an amount to be determined at trial, but exceeding the jurisdictional minimum of $75,000.

30. The Addendum to Basic Terms of Settlement requires that ▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅. Ex. B, ¶ 12.

31. Following SEI's ▅▅▅▅▅▅▅▅ deadline for implementing a ▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅ IM immediately objected to SEI's failure to perform that obligation, and has, for the past ten months, consistently informed SEI that it is in a state of noncompliance and breach

8

of the Denver Agreements. IM has sent the following Notices to SEI's counsel, in letter format, providing SEI with unequivocal notice of nonperformance:

- October 22, 2014: IM stated that SEI ████████████████████████ ████████████ and provided notice that SEI's website is in a state of noncompliance, as it continues to ████████████████. IM sought to confirm SEI's statement that it would have its website updated with new photographs "within 6 weeks or fewer." Despite this commitment, SEI did not update its website images, until updating some (but not all) images in Spring 2015, following repeated demands from IM, described below.

- November 10, 2014: IM again informed SEI that it had failed to implement a ████ ██████████████████, and demanded that SEI provide assurances that its website would be brought into compliance.

- December 1, 2014: and December 5, 2014, IM stated that the settlement structure was not working due to SEI's refusals to comply in good faith, and IM proposed a resolution.

- April 15, 2015: IM again objected to SEI's continued noncompliance concerning its failure to implement a ██████████████████████, and provided SEI with evidence of its continued noncompliance concerning its website. IM stated that SEI's failure to comply would result in a demand for arbitration.

- May 20, 2015: IM sent a Demand For Arbitration, ████████████████ ████████████████████████ requesting that SEI provide available dates for arbitration. SEI did not provide the requested available dates. Additionally, IM provided evidence that SEI has continued to market ████ ████████████████ at trade shows, and demanded that SEI cease this practice.

- June 17, 2015: IM sent a "Final, Renewed Demand for Arbitration" and provided further evidence of ██████████████.

- July 29, 2015: IM provided examples of SEI's breaches, as requested by SEI's

9

counsel, although SEI has chosen to take no action to remedy these breaches.

32. In response to IM's multiple demands for arbitration, SEI has refused to provide potential dates for arbitration, and upon learning that ███████████████████████, SEI has sought to make the arbitration process as burdensome and expensive as possible, which is not in the spirit of the parties' agreement. SEI's refusal to engage in a fair and efficient arbitration oh the current dispute has caused substantial and escalating financial harm to IM. Part of IM's requested relief is a fast, efficient, and inexpensive resolution to this dispute, whether through Court-ordered arbitration ███████████████, or otherwise.

33. The damage to IM accumulates and escalates as SEI continues to violate the Denver Agreements. SEI's conduct is now causing irreparable harm to IM's business, and irreparable confusion in the marketplace for the Radalert, Digilert and Inspector products, among customers as well as distributors.

34. By continuing to market and produce products that are confusingly similar to those of IM, SEI is unfairly reaping the benefits of IM's well-established reputation for producing high-quality products.

## First Cause Of Action

### Breach of Contract (Basic Terms of Settlement)

35. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

36. A valid contract exists between IM and SEI in the Basic Terms of Settlement.

37. Under the Basic Terms of Settlement, SEI was obligated to "████████████████████████████████████████████████████████████████████████████████████████████████████████"

38. SEI has failed to make ████████████████████████████████████████████████████.

39. Additionally, SEI has not fully complied with its obligation to ████████████████████, because it continues to ████████████████████████.

10

1    40.    SEI has failed to timely perform its non-monetary contractual obligations under the Basic Terms of Settlement, including its obligation to ████████████ ████████████████████████████████████, and has consistently marketed via its website products that do not comply with its obligations to ████████████ █. SEI's general unwillingness to comply with the parties' agreements has forced IM to expend its resources in attempts to compel SEI's compliance. At the same time, SEI's bad faith is damaging IM's business and causing extensive confusion in the marketplace for these products.

41.    IM has diligently performed all of its obligations under the Basic Terms of Settlement, in a timely manner.

42.    As a result of SEI's conduct, IM has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Breach of Contract (Addendum to Basic Terms of Settlement)

43.    Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

44.    A valid contract exists between IM and SEI in the Addendum to Basic Terms.

45.    Under the Addendum to Basic Terms, SEI agreed to ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████.

46.    SEI has failed to ████████████████████████████████, resulting in products that are not ████████████ and creating confusion in the marketplace.

47.    SEI continues to ████████████████████████████, in violation of its agreement to ████████████████████████████████.

48.    IM has performed all of its obligations under the Addendum to Basic Terms.

49.    As a result of SEI's conduct, IM has been damaged in an amount to be determined at trial.

11

### THIRD CAUSE OF ACTION

### Breach of Contract (Failure to Arbitrate)

50. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

51. A valid contract exists between IM and SEI in the Addendum to Basic Terms.

52. The Addendum to Basic Terms requires that, should a dispute arise between the parties, they shall "█████████████████████████████████████████████ ████████."

53. IM has transmitted to SEI multiple demands for arbitration, ████████████ ████████. SEI has failed to respond in good faith.

54. In response to IM's multiple demands for arbitration, SEI has refused to provide potential dates for arbitration, and upon learning that ████████████████████████ does not provide arbitration services, SEI has sought to make the arbitration process as burdensome, protracted, and expensive as possible, which is not in the spirit of the parties' agreement. IM eventually persuaded SEI to approach a potential arbitrator to make a proposal for arbitration, but SEI unreasonably refused to allow the potential arbitrator to access the contracts in question. Consequently, the parties have not been able to agree on the scope, extent, format, or timeline for arbitration, or even as to which documents may be submitted to an arbitrator for consideration. IM therefore seeks court direction and oversight on these matters, in order to compel SEI to arbitrate in good faith.

55. IM has performed its obligation under the Addendum to Basic Terms to ████████ ████████████████████████████████████████████, but IM's attempts have been unsuccessful as a result of SEI's unreasonable conduct.

56. As a result of SEI's conduct, IM has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## Unlawful Business Practices

## in Violation of Cal. Bus. and Prof. Code § 17200 et seq.

57. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

58. Defendant engaged in the following unlawful business practices:

    a. Breach of contract, as alleged herein in numerous instances

59. The conduct of SEI, as alleged above, constitutes unlawful, unfair and/or fraudulent business acts and practices prohibited by Business and Professions Code section 17200, and said unlawful, unfair and/or fraudulent conduct directly harmed IM.

60. As a direct and proximate result of SEI's unlawful activities, IM has suffered damages, and SEI has reaped unfair economic benefits, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

## Breach of Covenant of Good Faith and Fair Dealing

61. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

62. Valid contracts exist between IM and SEI in the Denver Agreements.

63. As a party to the Denver Agreements, SEI owed IM a duty to exercise good faith and fair dealing in the performance of its contractual obligations, which is a covenant implied in every contract in California.

64. By the acts and omissions alleged herein, SEI has wrongfully interfered with IM's right to receive benefits under the Denver Agreements, has failed to exercise good faith and fair dealing with regard to performance of its contractual obligations, and has thus breached the duty of good faith and fair dealing.

65. As a result of SEI's conduct, IM has been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### Declaratory Judgment

66. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

67. SEI has failed to perform its contractual obligations under the Denver Agreements, thus leaving the marketplace for Radalert/Digilert and Inspector products in a state of confusion.

68. A cloud of suspicion remains as to whether SEI is in violation of the Denver Agreements vis-à-vis its failure to ███████████████████████████████████████, as well as its failure to ███████████████████████████████████████████ ██████████████████████████████.

69. An actual, justiciable controversy therefore exists as to each of the following issues:

   a. Whether SEI has failed to perform the following obligation in the Basic Terms of Settlement: "█████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████████████"

   b. Whether SEI has failed to perform the following obligation in the Addendum to Basic Terms: ████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████"

   c. Whether SEI has failed to ████████████████████████████████████████████, pursuant to the Addendum to Basic Terms.

   d. Whether SEI has breached its duty of good faith and fair dealing under the Denver Agreements.

14

70. Declaratory judgment is necessary to terminate the controversy and clarify the legal rights of the parties.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff seeks relief against Defendant as follows:**

1. For general damages according to proof;
2. For special damages according to proof;
3. For statutory pre-judgment interest at the legal rate;
4. For restitution and/or restitutionary disgorgement of ill-gotten gains pursuant to Cal. Bus. & Prof. Code § 17200 et seq.;
5. For declaratory judgment that SEI has breached the Denver Agreements as alleged herein, has engaged in unlawful business practices, and has breached its duty of good faith and fair dealing.
6. For an Order compelling alternative dispute resolution of this matter under the Court's ADR procedures, whether through arbitration ██████████, or by other means the Court may find suitable;
7. For an Order granting immediate temporary relief to prevent further irreparable harm caused by SEI ██████████████████████, which is a clear violation of the parties' agreements;
8. For an Order enjoining (1) any further marketing or sales by SEI of the Digilert, and (2) any further marketing or sales by SEI of the Inspector product, pending resolution of this dispute;
9. For attorney's fees pursuant to all applicable laws; and
10. For other just and equitable relief as deemed appropriate by the Court.

1
2                                              Respectfully Submitted,
3
4                                              WILLEY & BENTALEB LLP
5
   Dated: August 21, 2015              By:   */s/ Carlton J. Willey*
6                                                        Carlton J. Willey
7                                                        *Attorney for Plaintiff*
                                                         *International Medcom, Inc.*
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WILLEY &
BENTALEB LLP
SAN FRANCISCO

COMPLAINT WITH JURY DEMAND