UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL MEDCOM, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>S.E. INTERNATIONAL, INC.,<br><br>　　　　Defendant. | Case No. 15-cv-03839-HSG<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 35 |

Before the Court is Plaintiff International Medcom, Inc.'s ("IM") motion for a preliminary injunction against Defendant S.E. International ("SEI"). Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, *see* Civil L.R. 7-1(b).

## I.　BACKGROUND

Plaintiff develops radiation detection instruments including the IM Radalert Digital Radiation Monitor and the IM Inspector. Plaintiff allowed Defendant, a manufacturer of radiation detection instruments, to sell the products under its company name, the SEI Digilert and SEI Inspector. The parties formalized their relationship in a "Letter of Agreement" under which Plaintiff branded the products under the IM label, Defendant branded the products under the SEI label, and both companies simultaneously sold the products with Defendant making periodic royalty payments to Plaintiff. Dkt. No. 11-3.

In 2006, disagreements arose between the companies. Per the Letter of Agreement's arbitration clause, the parties resolved their dispute through mediation. *Id.* On February 28, 2014, they memorialized their resolution in a document titled the "Basic Terms of Settlement." Dkt. No. 35-1 ("Basic Terms"). On September 8, 2014, the parties signed an additional contract, titled "Addendum to Basic Terms of Settlement," Dkt. No. 35-2 ("Addendum"). The Court will refer to

these agreements, collectively, as the "Settlement Agreements." In relevant part, the Settlement Agreements provided:

> *SEI will change the look of its boxes (enclosures) for the Inspector and Digilert, especially but not limited to the color such that they are clearly distinguishable.* This will be done within six months from today. SEI can sell off any remaining units using the old box (current enclosure) after this date but may not manufacture any additional units using the old box.

Basic Terms, ¶ 7 (emphasis added).

> SEI confirms that the design changes and obligations as outlined in the Basic Terms of Settlement Paragraph 7 will be implemented as of October 1, 2014. SEI will change the appearance of the enclosures SEI uses for the Inspector and Digilert products. *At minimum, such change will include altering the color of the enclosure to a color other than black and implementing a new, distinguishing enclosure design such that SEI's and IM's products are distinguishable.* Prior to the Effective Date of this Agreement, SEI will provide IM with notice of the new color and images or drawings of the new, distinguishing enclosure design it will implement.

Addendum, ¶ 7 (emphasis added).

Per these agreements, Defendant changed the products' color from black to blue, but Plaintiff contends that Defendant breached the Settlement Agreements by refusing to change the enclosures to make them "clearly distinguishable." The Addendum has an arbitration clause which requires the parties to arbitrate any dispute before filing a lawsuit. Plaintiff contends that it attempted to use arbitration, but that Defendant refused to provide dates and instead demanded Plaintiff withdraw its request to arbitrate. Dkt. No. 42 at 1.

Plaintiff filed this lawsuit on August 21, 2015, alleging several breach of contract claims. Pending before the Court is Plaintiff's motion for preliminary injunction, seeking to enjoin Defendant from selling the Inspector and Digilert devices pending resolution of this matter.[1]

## II.   CHOICE OF LAW

Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938), a federal court sitting in a diversity case applies federal procedural law and state substantive law to state law claims. *See Hanna v.*

---

[1] Defendant has filed a motion to compel arbitration, *see* Dkt. No. 27, which the Court has resolved in a separate order.

2

*Plumer*, 380 U.S. 460, 471 (1965).  "Nonetheless, the High Court has cautioned that 'choices between state and federal law are to be made not by application of any automatic litmus test, but rather by reference to the policies underlying the *Erie* rule,' and most particularly the policy which insures 'substantial uniformity of predictable outcomes between cases tried in federal court and cases tried in the courts of the state in which the federal court sits.'"  *Kenneth Arms Tenant Ass'n v. Martinez*, No. CIV. S-01-832 LKK, 2001 WL 37069196, at *11 (E.D. Cal. July 3, 2001) (quoting *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945)) (citation omitted).

For this reason, in a diversity case, when applying the federal standard for preliminary injunctions, a court must first determine whether a plaintiff would be entitled to injunctive relief under state law.  *See Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 646-47 (9th Cir. 1988) ("The general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that remedy."); *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F. Supp. 923, 931 (N.D. Cal. 1970) (making a threshold inquiry as to whether injunctive relief would be available under California law); *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. 07CV2172 AJB, 2012 WL 3861946, at *4 (S.D. Cal. Sept. 5, 2012) ("[T]he availability of injunctive relief is a substantive issue and is therefore governed by state law.").

Once a court determines that a plaintiff would be entitled to a preliminary injunction under state law, the court may rely on the federal standard to exercise its discretion regarding whether to grant the preliminary injunction.  *Kaiser*, 321 F. Supp. at 931 n.14 ("[T]he best approach would be to look to state law to determine if a preliminary injunction is permissible . . . [and then] look to federal law to determine whether the court should exercise its discretion." (citations omitted)).

### III.  AVAILABILITY OF PRELIMINARY INJUNCTION UNDER CALIFORNIA LAW

In California, a threshold question in determining whether a court will issue a preliminary injunction in a breach of contract case is whether specific performance is an available remedy.  A preliminary injunction is not available "[t]o prevent the breach of a contract the performance of which would not be specifically enforced."  Cal. Civ. Code § 3423(e); *see Kaiser*, 321 F. Supp. at 931.  For specific performance to be ordered, a plaintiff must show: "(1) the inadequacy of his

legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (Ct. App. 1983).

Plaintiff has failed to establish that the Settlement Agreements' terms are "sufficiently certain to make the precise act which is to be done clearly ascertainable." *See* Cal. Civ. Code § 3390. The Settlement Agreements required Defendant to "change the look of its boxes (enclosures) for the Inspector and Digilert, . . . such that they are clearly distinguishable." Basic Terms, ¶ 7; *see also* Addendum, ¶ 7. But the Settlement Agreements do not define "clearly distinguishable" or clarify what it means "to implement a new, distinguishing disclosure design." *See Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cnty. Black Fire Fighters*, No. 2:13-CV-9235-CAS, 2014 WL 794571, at *8 (C.D. Cal. Feb. 24, 2014) (holding specific performance remedy was unavailable where contract required party to "reasonably cooperate with and assist [plaintiff] in transitioning the collection of . . . insurance premiums . . . to . . . other premium collection slots" (internal quotation marks omitted)). Because the precise act to be done remains unclear from the face of the contract, specific performance is unavailable on this record. *See Patel v. Liebermench*, 45 Cal. 4th 344, 349 (2008) ("The equitable remedy of specific performance cannot be granted if the terms of a contract are not certain enough for the court to know what to enforce."). Accordingly, Plaintiff is not entitled to injunctive relief under state law, and the Court must deny its motion if California substantive law controls.

## IV. AVAILABILITY OF PRELIMINARY INJUNCTION UNDER FEDERAL LAW

Alternatively, if the substantive federal standard applies, Plaintiff is not entitled to a preliminary injunction under that standard either. A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

4

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.  Alternatively, an injunction could issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted) (alterations in original).  Under either standard, Plaintiff bears the burden of making a clear showing on these elements, and as to its entitlement to this extraordinary remedy generally. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

### A.   Likelihood of Success on the Merits

Plaintiff alleges that Defendant breached the Settlement Agreements. *See* Dkt. No. 11 ("FAC").  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."[2] *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  California requires that a contract's language govern its interpretation where the contract's "language is clear and explicit." Cal. Civ. Code. § 1638.  "When there is ambiguity in the contract language, extrinsic evidence may be considered to ascertain a meaning to which the instrument's language is reasonably susceptible." *Golden W. Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 21 (1994).

Defendant does not contest that the Settlement Agreements are a contract. *See* Dkt. No. 40 ("The Agreement is a contract that resulted from the settlement of a lawsuit brought by IM.").  Nor does Defendant contest Plaintiff's performance under the contract.  Rather, Defendant disputes the third prong—whether it has performed as required by the Settlement Agreements.

Plaintiff contends that (1) Defendant failed to change the Digilert and Inspector enclosures such that the products are "clearly distinguishable," FAC ¶¶ 37, 46; (2) Defendant failed to change the color of its products, as it continues to sell both the black and the blue products, FAC ¶¶ 38,

---

[2] The Court applies California law. *See Paramount Pictures Corp. v. Holden*, 166 F. Supp. 684, 688 (S.D. Cal. 1958) ("As this is a diversity case, the law relating to the contract, its interpretation and the policy it embodied is California state law.").

47; and (3) Defendant failed to change its product labeling so that SEI only uses the Inspector name in conjunction with its company name or initials, Basic Terms ¶ 10; FAC ¶ 40.

In support of its motion, Plaintiff submitted several declarations it argues support its position that it is likely to succeed on the merits. Plaintiff's CEO Dan Sythe states in his declaration that SEI's changes, such as changing the angle of the side group or adding plastic rather than metal accessory rails for the wipe test plate, were inconsequential. Dkt. No. 35-1, Ex. L, ¶ 6. Sythe refers to the number of inquiries he received from confused customers who were unable to distinguish between the products. *Id.* at ¶ 8. And, according to Sythe, Defendant continues to market black Digilerts at trade shows and conferences and has not informed its distributors of the color change. *Id.* at ¶¶ 10-11. Moreover, Plaintiff's consultant Leland Henderson contends that in his professional opinion "the new instruments were designed to look, feel and operate exactly" alike and that from "a design perspective there are no features that distinguish the two products." Dkt. No. 35-1, Ex. H, ¶ 8. Plaintiff also submitted declarations from users and other consultants that reiterate there is "a great deal of confusion" around the products and that "[m]ost people think they are the same products, because they look alike." *See* Dkt. No. 35-10, Ex. J, ¶ 9.

The crux of Defendant's response is that besides changing the color of the enclosures, the Settlement Agreements did not detail any specific other changes SEI was required to make. Dkt. No. 40 at 4. Defendant argues that "it defies logic that 'minimum' changes would require an entirely new enclosure - at minimum, SEI had to change the color." *Id.* at 5. Defendant further contends that it performed under the terms of the contract by (1) changing the product's color from black to blue, (2) modifying the texture and edges of the unit, (3) adding larger, diagonal serrations on the sides, (4) adding beveled edges to the enclosure's front label, (5) including built-in rails for the wipe test plate, (6) adding an opening for USB and other input devices, (7) enlarging the holes for certain buttons on the enclosure, and (8) removing the timer switch on the end of the panel. *Id.* at 6-7. Defendant also takes issue with Plaintiff's references to the "confusingly similar" appearance of the products, citing the contract's language and arguing that inclusion of the term "distinguishable" was a material and bargained-for part of the negotiations.

6

*Id.* at 6 n.4 ("The standard set forth in both the Basic Terms and the Addendum is whether the items are distinguishable, not confusingly similar."). Defendant also submitted declarations to counter allegations of confusion. *See* Dkt. No. 40-1, Ex. A, ¶ 6 (noting that SEI has not received any complaints, notices, or other information suggesting that SEI's product devices were confused with IM's.).

Given the conflicting declarations and both parties' facially plausible interpretations of the contract, there remains a legitimate dispute regarding the scope of Defendant's performance required under the contract. The Court therefore finds that Plaintiff has not met its high burden of showing a likelihood of success on the merits.

### B.     Irreparable Harm

"A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Moreover, mere financial injury "will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984) (concluding that plaintiff's harm would be easily calculable in damages); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). For these reasons, preliminary injunctions are rarely issued for breach of contract claims. *See Telephia Inc. v. Cuppy*, No. C 04-03508 SI, 2005 WL 588441, at *3 (N.D. Cal. Mar. 11, 2005) ("[A] claim for breach of contract can be compensated by money damages, and does not warrant the issuance of a preliminary injunction."); *ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304 SBA, 2006 WL 3346226, at *8 (N.D. Cal. Nov. 17, 2006) ("[A] preliminary injunction will not issue based on a breach of contract claim.").

Plaintiff submitted declarations from CEO Sythe and Former IM Marketing Consultant Patricia Bernard in an effort to establish irreparable harm. Sythe indicates that he "regularly

receive[s] inquiries from customers that are confused by the Inspector and Digilert products." Dkt. No. 35-1, Ex. L, ¶ 8.  He explains that SEI's continued use of both the black and blue products has created confusion, which is "killing [IM's] business in the short term, as well as irreparably harming the IM Inspector brand in the long term."  *Id.* at ¶¶ 14-15.  Sythe states that if the "confusion caused by SEI continues, IM will not be able to survive.  It's a matter of weeks and months, not years."  *Id.* at ¶ 16.

Additionally, Bernard describes IM's financial troubles, which led IM to sublease office space, reduce overhead, and suspend the services of Bernard and other employees. Dkt. No. 35-1, Ex F, ¶¶ 11-12.  Bernard states her belief that SEI's actions compromised IM's ability to compete in the marketplace.  *Id.* at ¶¶ 6, 12.

Although Sythe and Bernard's declarations arguably indicate that IM has suffered harm, the Court finds a lack of support for irreparable harm.  *See Sampson*, 415 U.S. at 90 ("The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").  Specifically, the record does not contain non-conclusory evidence sufficient to establish that (1) IM's survival is a matter of weeks or months, (2) SEI caused IM's financial troubles, and (3) if Plaintiff is ultimately successful, compensatory damages and injunctive relief would be inadequate.  *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (affirming district court's rejection of plaintiff's claims for losses of reputation, competitiveness, and goodwill where there was no showing of causation between the decline in sales and the contract's exclusivity feature); *Caribbean*, 844 F.2d at 674 (reversing preliminary injunction where district court did not require plaintiff to show the economic losses alleged were likely to occur or imminent); *Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 678 (9th Cir. 2011) (unpublished) ("[L]ost profits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief.").

Plaintiff also alleges that Defendant's continued breach of the Settlement Agreements would continue to harm IM's reputation.  In some cases, harm to reputation can be irreparable. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  But the

Court cannot conclude this is one of those cases. Bernard's affidavit makes conclusory allegations regarding the cause of IM's financial problems and Sythe, as an interested party, does not establish a non-speculative threat of irreparable injury supported by evidence (as opposed to conclusions). *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473-74 (9th Cir. 1985) (rejecting allegations of harm based on affidavits from company's own executives as conclusory and without sufficient support in facts—"AP's president stated that it sustained large losses in 1982-83, and he forecast large losses again in 1983-84. These statements, standing alone, are insufficient evidence that AP is threatened with extinction."). Moreover, "the loss of business relationships is an economic harm that can be valued." *Telephia*, 2005 WL 588441, at *4 (concluding defendant could be compensated for the value of the "right to work exclusively in the wireless technology market, and to keep defendants from engaging in business relationships in competition with plaintiff").

Finally, Plaintiff's 12-month delay before pursuing a preliminary injunction also suggests a lack of urgency to the harm. *See Playboy Enter., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) ("[D]elay in seeking injunctive relief further demonstrates the lack of any irreparable harm."). In October 2014, Defendant emailed Plaintiff a list of the changes it had made to the enclosures, Dkt. No. 40-2, Ex. B, and Plaintiff acknowledges that is when it learned of Defendant's alleged noncompliance, Dkt. No. 42. at 5. Plaintiff contends that it pursued alternative forms of relief during that year (including arbitration, as required by the terms of the Settlement Agreements) and only turned to judicial intervention as a last resort. Dkt. No. 35 at 8; Dkt. No. 42 at 5. But even accepting as true Plaintiff's contention that it "has consistently and through reasonable means attempted to procure SEI's compliance," Dkt. No. 42 at 6, that explanation does not negate the fact that a 12-month delay before requesting an injunction strongly suggests the absence of imminent irreparable harm. Accordingly, Plaintiff has not met its burden as to this factor.

C. **Balance of Hardships**

"A plaintiff seeking a preliminary injunction must establish that the balance of equities tips in his favor." *Maxim Integrated Prod., Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1036 (N.D. Cal.

9

2009). Under this factor, courts examine how a preliminary injunction could harm the parties.

Plaintiff has not demonstrated that the balance of hardships tilts in its favor. As discussed, Plaintiff has not shown that it will suffer irreparable injury if a preliminary injunction is not granted. Defendant, on the other hand, has been selling these products for twenty years and an injunction enjoining them from continuing to do so would cause substantial harm, especially given that Inspector and Digilert sales make up approximately 65 percent of SEI's revenue. *See* Dkt. No. 40-1, Ex. A, ¶ 5. Given that the "the basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits," *Oakland Tribune*, 762 F.2d at 1377, and the absence of any imminent new harm, the balance of equities does not tip in Plaintiff's favor.

### D. Public Interest

Finally, "a court finding that the public interest is involved may craft or withhold injunctive relief for the public's benefit." *Marquez Bros. Int'l v. Atletico Morelia S.A. De C.V.*, No. 5:05-CV-1889 RS, 2005 WL 1869501, at *2 (N.D. Cal. Aug. 5, 2005).

The radiation detection instruments serve a substantial public interest in helping governments, non-governmental organizations, and communities detect radiation levels following a disaster. *See* Dkt. No. 35-5, Ex. E, ¶¶ 2-3. Plaintiff argues that the confusion in the marketplace harms the public's interest, and claims that in the absence of an injunction, users will be prevented from knowing "which company makes the products they purchase, where to find the appropriate product documentation and customer support, and where to send the products for repairs and maintenance." Even if true, these facts do not establish that any public interest is at stake in this commercial dispute which would outweigh Plaintiff's insufficient showing as to the other factors.

//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction is **DENIED**.[3]

**IT IS SO ORDERED.**

Dated: 12/2/2015

*[signature]*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] The Court denies Defendant's evidentiary objections for failure to comply with the local rules. *See* Civil L.R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum.").